Ryan MERRIWEATHER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0201–CR–42.

Court of Appeals of Indiana.

Nov. 13, 2002.

Lesa Lux Johnson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

After a bench trial, Ryan Merriweather was convicted of conspiracy to commit robbery,[1] robbery,[2] and two counts of criminal confinement,[3] all as Class B felonies. He now appeals, raising the following two issues for our review:

I. Whether Merriweather's convictions for robbery and criminal confinement violate double jeopardy where the confinement and the robbery occurred in the same incident.

II. Whether sufficient evidence supports Merriweather's convictions as Class B felonies based on the use of a deadly weapon when he was armed with an inoperable pellet gun and his companions were armed with BB guns.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 12, 2000, Sandra Pierce–Wong, the assistant manager of a pizza restaurant, and other employees were preparing to close the restaurant for the evening. As Pierce–Wong approached the

---

1. *See* IC 35–41–5–2; 35–42–5–1.

2. *See* IC 35–42–5–1.

3. *See* IC 35–42–3–3.

front door to lock it, she noticed three masked individuals crawling on the ground in front of the store. The three, each of whom was armed, then entered the store.

A man in a werewolf mask grabbed Pierce–Wong's arm and demanded money. At gunpoint, Pierce–Wong led the man to the cash register. After she emptied the contents of the register, they went toward the manager's office. Along the way, they encountered Jose Alvarado, another store employee. The man ordered Alvarado to accompany them to the office. Inside the office, one of the men directed Alvarado to lie on the floor and Pierce–Wong to open the safe. A man in a scream mask then brought another employee, Nicole Cline, into the office, and she lay next to Alvarado.

The man in the werewolf mask became angry at Pierce–Wong and told her he was going to kill her. He stood behind her and cocked his weapon. She heard a click, felt a burst of air, and realized that the weapon was a BB gun.

Meanwhile, Marion County sheriff's deputies were dispatched to the scene. While outside the restaurant, one of deputies saw the man in the scream mask point his weapon at the officers. The deputy fired at the man. Pierce–Wong heard the gunshot and heard the man in the scream mask say that he had been shot. Officers apprehended the man in the scream mask inside the restaurant and apprehended the man in the werewolf mask and a man in a ski mask after they fled from the restaurant's side door. Later, Merriweather admitted that he was the man in the werewolf mask.

Merriweather was charged with robbery, conspiracy to commit robbery, and three counts of criminal confinement for the confinement of Pierce–Wong, Alvarado, and Cline. He was convicted of robbery, conspiracy to commit robbery, and

the confinement of Pierce–Wong and Alvarado. He now appeals.

## DISCUSSION AND DECISION

■ Merriweather first contends that his convictions for robbery and criminal confinement violate the constitutional prohibition against double jeopardy. The analysis of double jeopardy claims under the Indiana Constitution is governed by *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), in which our supreme court described two components, the statutory elements test and the actual evidence test. *Wieland v. State*, 736 N.E.2d 1198, 1204 (Ind.2000). Two offenses are the "same offense" in violation of Article I, Section 14 of the Constitution if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* (quoting *Richardson,* 717 N.E.2d 32); *Vanzandt v. State*, 731 N.E.2d 450, 454–55 (Ind.Ct.App.2000), *trans. denied.*

■ The objective of the statutory elements test is to determine whether the essential elements of separate statutory crimes charged could be established hypothetically. *Thy Ho v. State*, 725 N.E.2d 988, 991 (Ind.Ct.App.2000). The charged offenses are identified by comparing the essential statutory elements of one charged offense with the essential statutory elements of the other charged offense. *Id.* We review the relevant statutes and the charging instruments and consider the essential statutory elements to determine the identity of the offense charged, but do not evaluate the manner or means by which the offenses are alleged to have been committed, unless the manner or means comprise an essential element. *Id.*

After this court identifies the essential elements of each charged offense, we must determine whether the elements of one of the challenged offenses could, hypothetically, be established by evidence that does not also establish the essential elements of the other charged offense. *Id.*

Here, Merriweather was convicted of robbery and criminal confinement. Robbery consists of taking property "by using or threatening the use of force" or "by putting any person in fear." IC 35–42–5–1. Criminal confinement consists of confining a person or removing them by fraud, enticement, force, or threat of force from one place to another. IC 35–42–3–3. Simultaneous convictions of robbery and confinement charges do not violate Indiana's statutory elements test. *Vanzandt*, 731 N.E.2d at 455.

Where, as here, the statutory elements test does not disclose a double jeopardy violation, we turn to the actual evidence test. *Thy Ho*, 725 N.E.2d at 991. Under that test, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Vanzandt*, 731 N.E.2d at 455; *Thy Ho*, 725 N.E.2d at 991. To show that two challenged offenses constitute the same offense under the actual evidence test, a defendant must show a reasonable possibility that the evidentiary facts used by the fact finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Wieland*, 736 N.E.2d at 1204; *Thy Ho*, 725 N.E.2d at 991.

As our supreme court has explained:

"The *Richardson* actual evidence test was carefully and deliberately crafted to provide a general formulation for the resolution of all actual evidence test claims. The language expressing the actual evidence test explicitly requires evaluation of whether the evidentiary facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. The test is not merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second challenged offense. In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense."

*Spivey v. State*, 761 N.E.2d 831, 832–33 (Ind.2002).

Generally, double jeopardy does not prohibit convictions of confinement and robbery when the facts indicate that the confinement was more extensive than that necessary to commit the robbery. *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001); *Thy Ho*, 725 N.E.2d at 993. This principle was illustrated in *Hopkins*, 759 N.E.2d at 639–40, in which our supreme court applied the actual evidence test to a defendant's convictions of confinement and robbery, which resulted from the same episode. In that case, the court explained that the defendant's confinement of the victims extended beyond what was necessary to rob them because the defendant forced his victims to the home's basement at gunpoint, robbed them, then went upstairs to search the house. It observed that it was not necessary to force the victims into the basement to rob them or to force them to stay in the basement as he searched the house. The court noted

that the evidence used to establish the confinement could not have also proved robbery because it would not have proven the taking element, but whether the evidence proving the essential elements of robbery may have also been used to establish the essential elements of criminal confinement was a closer question.

The court remarked that under the evidence presented, the jury could have found that the offense of criminal confinement was committed at any of four points during the incident, including when the victims were forced at gunpoint to hand over money. The court explained that double jeopardy is found only when it is reasonably possible that the jury used the same evidence to establish two offenses, not when that possibility is speculative or remote, that is, when there is no substantial likelihood that the jury used the same evidentiary facts to establish the essential elements of two offenses. Based on the protracted nature of the incident and the completed offense of the criminal confinement as to each victim when he or she was initially ordered at gunpoint into the basement, the court found no substantial likelihood that the jury based its determination of guilt on the confinement counts upon the evidence of the incidental confinement at the moment of the robbery and therefore concluded that the defendant's confinement and robbery convictions did not constitute double jeopardy. *Id.*

By comparison, in *Vanzandt*, 731 N.E.2d at 454–56, we agreed with the defendant's contention that his convictions for robbery and criminal confinement violate double jeopardy. We examined the elements of each crime and the evidence at trial, which showed that the defendant, while armed with a handgun, ordered two victims to lie down on the floor while he effected his robbery and obtained access to the getaway vehicle. We concluded that compelling the victims to lie on the floor was not separate and apart from the force used to effect the robbery. Because there was an absence of evidence to establish the essential elements of confinement of the victims independent of the robbery, we concluded that the force or threat of force exerted by the defendant was that exerted to accomplish the robbery. Because the defendant demonstrated a reasonable possibility that the jury used the same evidentiary facts to establish criminal confinement as it did to establish the essential elements of robbery, we concluded that conviction of both violated the Indiana Double Jeopardy Clause and therefore vacated the conviction for criminal confinement. *Id.*

█ In the present case, Merriweather was tried to the bench, so we must examine the evidence relied upon by the court to establish his guilt of the offenses in question. The evidence shows that Merriweather entered the restaurant, grabbed Pierce–Wong's arm and ordered her to empty the cash register drawers. After she did so, the robbery was complete. Thereafter, Merriweather continued to hold her at gunpoint and ordered her to go to the manager's office. There, he confined Pierce–Wong and Alvarado at gunpoint for nearly fifteen minutes and eventually fled. Although Merriweather committed confinement simultaneously to the robbery, the evidence also shows a confinement separate and apart from the robbery of the cash register. Accordingly, we find no reasonable possibility that the court used the same evidentiary facts to convict Merriweather of robbery and the two counts of criminal confinement. *See also Boatright v. State*, 759 N.E.2d 1038, 1044 (Ind.2001) (convictions of robbery and confinement did not violate actual evidence test where after confining victim, defendant committed second act of robbery by taking money from her purse;

confinement conviction arose from act of forcing victim to back office, while robbery conviction arose from distinct transgression of taking money from purse); *Thy Ho*, 725 N.E.2d at 993 (finding no double jeopardy violation for convictions of criminal confinement and robbery where evidence showed that victim's confinement was more extensive than necessary to commit robbery; victim was initially confined when she tried to escape, was again confined as the defendant led her upstairs at gunpoint, was confined in her bedroom, was briefly allowed to console her son, and then was confined as the robbers looked.for money and jewelry).

Nonetheless, Merriweather argues his convictions of robbery and criminal confinement violate IC 35–38–1–6 because confinement is a lesser included offense of robbery in this context. IC 35–38–1–6 protects defendants charged with an offense and an included offense from being found guilty of both charges as this is tantamount to convicting a defendant twice for the same conduct. An offense may be either inherently or factually included in another offense for purposes of the statute. *Harvey v. State*, 719 N.E.2d 406, 411 (Ind.Ct.App.1999). An offense is inherently included in another when it may be established by proof of the same material elements or less than all the material elements defining the more serious crime charged. *Id.* (citing IC 35–41–1–16(1); *Goudy v. State*, 689 N.E.2d 686, 697 (Ind.1997); *Wright v. State*, 658 N.E.2d 563, 566 (Ind.1995)). An offense is factually included in another when the charging instrument alleges the means used to commit the crime charged include all of the elements of the alleged lesser included offense. *Id.*

In *Harvey*, 719 N.E.2d at 410–12, another defendant argued that his convictions for robbery and criminal confinement vio-

lated the statute. In that case, the defendant and his companion held a store clerk at gunpoint until she gave them the money from the store's cash register. After that, the defendant's companion pistol-whipped the woman until she explained how to open the second register. The woman then feigned unconsciousness, and the two men left.

We noted the elements of both robbery and criminal confinement and commented that confinement is inherently included in robbery because the "use or threat of force" element needed to support the conviction of robbery is not distinct from the "confinement" element needed to support the conviction of criminal confinement. We observed that confinement exists when there is a substantial interference with liberty without consent, and that any amount of force can cause a confinement because force, however brief, equals confinement. Finally, we noted that unless there is force used beyond that which is inherently necessary in any robbery, there cannot be a separate conviction of confinement. *Id.*

Applying these rules, we concluded that the only element of force charged was that inherent in the robbery itself. We examined the language of the charging instruments and concluded that neither the language of the charging instrument nor the evidence presented at trial identified a factual basis for the confinement charge separate from the factual basis for the robbery where the confinement charge alleged generally that the victim was detained and not allowed to leave. Because the force used to support the robbery conviction was precisely coextensive with the force used to support the confinement, we concluded that conviction of both would violate IC 35–38–1–6. Accordingly, we vacated the defendant's confinement conviction.

■ Here, however, as noted above, Merriweather's confinement of Pierce–Wong and Alvarado was more extensive than that necessary to effect the robbery. The robbery was complete when Merriweather held Pierce–Wong at gunpoint and forced her to empty the contents of the cash register drawer. The confinement then continued as Merriweather forced Pierce–Wong and Alvarado to move from the register to the office. Moreover, the information charges Merriweather with moving Pierce–Wong and Alvarado by force from one location to another within the restaurant. While Merriweather certainly confined Pierce–Wong while she emptied the cash register, he confined her and Alvarado after the completion of the robbery as well. Merriweather's convictions for both offenses do not violate the statute.

■ Merriweather next argues that there is insufficient evidence to support his convictions as Class B felonies based on his use of a deadly weapon because the only weapons used in the robbery were BB guns and an inoperable pellet gun. In reviewing a challenge to the sufficiency of the evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. *Wieland*, 736 N.E.2d at 1201.

IC 35–42–3–3 provides that criminal confinement, normally a Class D felony, is a Class B felony if it is committed while armed with a deadly weapon. Similarly, IC 35–42–5–1 provides that robbery, normally a Class C felony, is a Class B felony if it is committed while armed with a deadly weapon.[4] IC 35–41–1–8 defines "deadly weapon" in part as a loaded or unloaded firearm, or as a destructive device, weapon, device, taser, or electronic stun weapon, equipment, chemical substance, or other material that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury. Serious bodily injury is in turn defined as "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." IC 35–41–1–25.

■ Thus, based on the statute, there are two categories of "deadly weapons:" (1) firearms; and (2) weapons capable of causing serious bodily injury. *Mitchem v. State*, 685 N.E.2d 671, 677–78 (Ind.1997). Although not firearms, pellet or BB guns can be considered deadly weapons within the statute. *Id.; Whitfield v. State*, 699 N.E.2d 666, 670 (Ind.Ct.App. 1998), *trans. denied; Hart v. State*, 671 N.E.2d 420, 428 (Ind.Ct.App.1996). The question of whether a weapon is a deadly weapon is determined from a description of the weapon, the manner of its use, and the circumstances of the case. *Glover v. State*, 441 N.E.2d 1360, 1362 (Ind.1982); *Hart*, 671 N.E.2d at 428. The fact finder may look to whether the weapon had the actual ability to inflict serious injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime. *Whitfield*, 699 N.E.2d at 670.

---

**4.** IC 35–41–5–2 provides that a conspiracy to commit a felony is a felony of the same class as the underlying felony. Thus, Merriweath-er's challenge to his conviction of conspiracy to commit robbery as a Class B felony rises or falls with his robbery conviction.

In *Whitfield,* 699 N.E.2d at 670–71, we held that a disabled pellet gun that was used in a threatening manner and placed the victims in fear was a deadly weapon. The evidence in that case showed that the defendant entered the store, stuck a gun in the victim's face, and demanded money, severely frightening the victim. Other testimony showed that pellet guns are virtually indistinguishable from the real caliber guns after which they are modeled. *Id.*

■■■ Here, Dr. Michael Clark, a forensic pathologist, testified that the BB guns used in the robbery could propel a projectile up to two hundred feet per second. Although the pellet gun was inoperable, Clark testified that if it were in good repair, it could propel a projectile up to four hundred and thirty feet per second. He opined that BB guns can cause serious bodily injury or death. He testified that a projectile traveling two hundred to two hundred and fifty feet per second can pierce human skin and enter the body. This evidence shows that the BB guns were actually able to inflict serious bodily injury.

Pierce–Wong testified that the three men who robbed the restaurant were each armed with a gun that was chrome or black and appeared to be real. She and Alvarado both testified that they were scared. Pierce–Wong testified that Merriweather held her at gunpoint as she emptied the cash drawer and then led the robbers to the manager's office. She also testified that Merriweather threatened several times to kill her for not cooperating or not listening to him. At one point, he told her he was going to kill her, and holding the gun at the back of her head, cocked the gun. Pierce–Wong testified that she heard a click, felt a burst of air, heard a rattle, and realized that the weapon was a BB gun. She testified that she

believed that the other two men were armed with real guns.

The evidence at trial showed that the weapons had the apparent ability to cause serious bodily injury and because they were used in a threatening manner, put the victims in fear. The evidence was sufficient to support Merriweather's convictions. *See also Hart,* 671 N.E.2d at 428 (BB gun was deadly weapon where defendant pointed it at victim and put victim in fear for his life); *Frey v. State,* 580 N.E.2d 362, 364–65 (Ind.Ct.App.1991) (jury reasonably determined that pellet rifle was deadly weapon where defendant aimed gun at victim and shot it, causing painful wounds and expert testified that gun could kill small game and could cause blindness or impairment of vision under certain circumstances); *Williams v. State,* 451 N.E.2d 687, 690–91 (Ind.Ct.App.1983) (substantial evidence that pellet gun was deadly weapon where testimony described type of projectile fired from gun and jury could use experience to conclude that serious bodily injury could result); *Decker v. State,* 179 Ind.App. 472, 495 n. 5, 386 N.E.2d 192, 207 n. 5 (1979) (even toy gun can be deadly weapon if it could be used as a bludgeoning instrument).

■■■ Merriweather nonetheless argues that *Whitfield* wrongly expands the statutory definition of deadly weapon and urges us to reconsider this issue because the pellet gun he used in the robbery was inoperable and therefore not capable of harming his victims. However, even if we were to find the pellet gun was not a deadly weapon, Merriweather's companions were armed with operable BB guns, and Merriweather does not argue that those weapons were not capable of inflicting serious bodily injury. A defendant is criminally liable for the use of a weapon by an accomplice even in the complete absence of evidence that the defendant was

personally armed. *See Wilson v. State,* 513 N.E.2d 653, 655 (Ind.1987). Thus, there is sufficient evidence to support Merriweather's conviction even without regard to the pellet gun that he carried.

Affirmed.

BROOK, C.J., and DARDEN, J., concur.