**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Oct 03 2013, 5:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**T. MICHAEL CARTER**
Scottsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD GREEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 36A01-1212-CR-571 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JACKSON CIRCUIT COURT
The Honorable William E. Vance, Judge
Cause No. 36C01-1008-FB-37

**October 3, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Richard Green (Green), appeals his conviction for armed robbery, a Class B felony, Ind. Code § 35-42-5-1; and his adjudication as an habitual offender, I.C. § 35-50-2-8.

We affirm.

## ISSUE

Green raises one issue which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to sustain his conviction for armed robbery.

## FACTS AND PROCEDURAL HISTORY

In 2010, fifty-four-year-old Green met nineteen-year-old Harry Piepmeyer (Piepmeyer) while they both were imprisoned on unrelated charges. They became friends and would talk about robbing banks together. Green was released from prison prior to Piepmeyer. On April 1, 2010, Piepmeyer was released and picked up by Green; Green took Piepmeyer to breakfast and they talked again about robbing banks. The following day, Piepmeyer and Green drove in Green's car to Lafayette where Green purchased disguises from several costume stores. On April 3 and 4, 2010, Piepmeyer and Green drove around, scouting out several banks in Scottsburg, Columbus, and Seymour, Indiana. Green suggested that the People's Bank in Seymour would be easiest to rob location-wise as it was located across the street from elevated railroad tracks which would facilitate their escape.

2

On the morning of April 5, 2010, Green drove Piepmeyer to a location near People's Bank. Green told Piepmeyer that he would wait for him on the opposite side of the railroad tracks. Green had also advised Piepmeyer of what to say during the robbery and had asked him to wear the disguise, which included a black wig and a black beard and mustache.

At approximately 11 a.m., Piepmeyer walked into the People's Bank, brandishing a weapon, which was later determined to be a BB gun, and announced the robbery. Piepmeyer pointed the BB gun at a customer and ordered him to the ground. After waving the BB gun around, Piepmeyer pointed it at the tellers, placing teller Adilee Fegley (Fegley) in fear for her life. He demanded that the tellers hand over the bank's money or he would "kill" them. (Transcript p. 206). Fegley and the other tellers handed Piepmeyer the money, in the amount of $16,557. When Piepmeyer left the bank, he met up with Green and they drove away in Green's car. Green divided the money, giving Piepmeyer $5,000 and keeping the rest for himself.

After the robbery, Green and Piepmeyer continued to hang out and exchange phone calls. Despite Green's urging to commit more bank robberies, Piepmeyer refused. After that, Piepmeyer became afraid of Green, started to ignore his phone calls, and purchased a handgun for his protection.

Piepmeyer became a suspect in the People's Bank robbery when authorities matched his DNA to a necktie that he had discarded near the place of the robbery. When confronted with the DNA evidence, Piepmeyer confessed to the robbery and divulged

Green's involvement. Piepmeyer pled guilty to armed robbery, as a Class B felony and received a ten-year sentence with two years suspended.

On August 12, 2010, the State filed an Information charging Green with armed robbery, a Class B felony, I.C. § 35-42-5-1. On April 4, 2011, the State amended the Information, adding a habitual offender Count, I.C. § 35-50-2-8. On October 16 through October 18, 2012, the trial court conducted a jury trial. At the close of the evidence, the jury found Green guilty as charged. On November 16, 2012, during the sentencing hearing, the trial court sentenced Green to seventeen years for armed robbery, enhanced by twenty years for being a habitual offender, resulting in an aggregate sentence of thirty-seven years.

Green now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Green argues that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for armed robbery. When reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *Walker v. State*, 984 N.E.2d 642, 644 (Ind. Ct. App. 2013). We may look only to the evidence most favorable to the judgment and reasonable inferences therefrom and will affirm if we conclude that evidence of probative value exists such that a reasonable fact finder could find the elements of the underlying crime proven beyond a reasonable doubt. *Id.*

To convict Green of robbery, a Class B felony, the State was required to establish that Green knowingly or intentionally took property from another person (1) by force or

4

the threat of force or (2) by putting the person in fear, while armed with a deadly weapon. *See* I.C. § 35-42-5-1. Green's sole contention revolves around the element of a deadly weapon.[1] He maintains that, under the particular circumstances, Piepmeyer's brandishing of a BB gun cannot be categorized as a deadly weapon.

Indiana Code section 35-41-1-8 (2010) defined a deadly weapon as

(a) Except as provided in subsection (b), deadly weapon means the following:
    (1) A loaded or unloaded firearm.
    (2) A destructive device, weapon, device, taser [] or electronic stun weapon [], equipment, chemical substance, or other material that in the manner it:
        (A) is used;
        (B) could ordinarily be used; or
        (C) is intended to be used;
is readily capable of causing serious bodily injury.

Although not firearms, pellet or BB guns can be considered deadly weapons. *Merriweather v. State*, 778 N.E.2d 449, 457 (Ind. Ct. App. 2002). Whether a weapon is a deadly weapon is determined from a description of the weapon, the manner of its use, and the circumstances of the case. *Id*.

Besides the bank's security camera video, which had captured the robbery in progress, the trial court also admitted into evidence BB gun packaging, which had been recovered from Green's residence. At trial, Piepmeyer testified to Green's involvement in the robbery and affirmed that the packaging was "similar to" the BB gun used in the robbery. (Tr. p. 310). The packaging included a warning label, which provided: "Do not

---

[1] It should be noted that a defendant is criminally liable for the use of a weapon by an accomplice even in the complete absence of evidence that the defendant was personally armed. *See Wilson v. State*, 513 N.E.2d 653, 655 (Ind. 1987).

brandish or display this airgun in public—it may confuse people and may be a crime. Police and others may think it is a firearm." (State's Exh. 9). Although no actual gun was ever recovered, it is not necessary that the weapon be admitted into evidence at trial. *Brown v. State*, 360 N.E.2d 830, 833 (Ind. 1977).

Teller Fegley testified that Piepmeyer entered the bank, brandishing a gun. He held the gun "up to our customer's chest" and he was pointing "at all of [them]." (Tr. p. 206). She stated that Piepmeyer demanded the money or he would "kill" her. (Tr. p. 206). Fegley indicated that she perceived the weapon as a "real gun" and it placed her in fear of her "life." (Tr. p. 207). We have previously held that a victim's testimony that he or she saw the defendant use what was believed or figured to be a gun is, by itself, sufficient proof of the use of a deadly weapon. *Gorman v. State*, 968 N.E.2d 845, 851 (Ind. Ct. App. 2012), *trans. denied*. *See also Rogers v. State*, 537 N.E.2d 481, 485 (Ind. 1989) (holding that a disabled gun was a deadly weapon where "the realism of the weapon coupled with [defendant's] threatening behavior caused the victims to fear for their lives."). Therefore, based on the evidence before us, we conclude that the State presented sufficient evidence for a trier of fact to reasonably infer that a deadly weapon was used during the commission of the robbery.

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence beyond a reasonable doubt to sustain Green's conviction.

Affirmed.

KIRSCH, J. and C. J. ROBB concur

6