**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 10 2013, 5:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NICOLE A. ZELIN**
Greenfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TABATHA MURPHY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 30A04-1302-CR-82 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
Cause No. 30D01-1112-FB-2257

**October 10, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Tabatha Murphy (Murphy), appeals her convictions for battery with a deadly weapon, a Class C felony, Ind. Code § 35-42-2-1; battery resulting in serious bodily injury, a Class C felony, I.C. § 35-42-2-1; and battery, a Class A misdemeanor, I.C. § 35-42-2-1.

We affirm.

## ISSUES

Murphy raises three issues which we consolidate and restate as follows:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to sustain her convictions for battery armed with a deadly weapon and battery resulting in serious bodily injury; and

(2) Whether her convictions for battery with a deadly weapon and battery resulting in serious bodily injury violates Indiana's Double Jeopardy clause.

## FACTS AND PROCEDURAL HISTORY

On the evening of July 6, 2010, Murphy arrived at her ex-husband's house, intending to take her son, Martin Murphy IV (M.M.), who was staying with his father, Martin Murphy III (Martin), with her. Martin's fiancée, Stacy Zentz (Zentz), and their son also lived at the residence, located in Fortville, Indiana. Murphy's friend, Mark Laffin (Laffin), drove Murphy and Murphy's daughter in his vehicle to Martin's house. Martin was not home at the time and Murphy told Zentz she came to pick up her food stamp card. Zentz returned Murphy's card. However, Murphy informed Zentz that she

wanted to wait for Martin to return home. After about twenty-five minutes Murphy began to grow impatient and irritable.

When Zentz went inside the house with M.M. to get a drink, Murphy followed her and told M.M. to get his "f---ing shoes on." (Transcript p. 39). Murphy picked up M.M.'s shoes, grabbed him by the arm, and led him out of the house and into the yard. As Zentz followed them out, she inquired what was happening because it was her understanding that M.M. would be spending the summer with her and Martin. Murphy informed Zentz that she and Martin would never see M.M. again. Challenging Zentz, Murphy asked her, "Do you want to fight me, bitch?" and shoved Zentz. (Tr. p. 40). Zentz shoved her back.

Murphy placed Zentz in a headlock, pulling both her arms behind her back, and biting her right hand. Murphy attempted to gouge Zentz' eyes, digging her fingernails into her eyes, and scratching her badly enough to draw blood. At some point, Zentz fell to the ground. Murphy reached for a hammer lying nearby and struck Zentz' head, inflicting a three-inch cut that later required eleven staples to close. Before Zentz could get up, Murphy began to hit her with a skateboard. In an effort to defend herself, Zentz picked up a plastic flowerpot and threw it at Murphy, hoping that the dirt would obscure her vision and allow Zentz to escape.

At some point, Murphy yelled at Laffin to put M.M. in the car. While continuing to swing the skateboard, Murphy also got into the car. Zentz reached through the window in an attempt to get her son's skateboard back. However, Murphy grabbed Zentz' right arm, and turned to Laffin, telling him "We're gonna drive this bitch into the

3

ground." (Tr. p. 48). Laffin sped out of the residence's driveway, into the street, dragging Zentz' alongside the car.

A neighbor, Mark Alte (Alte), had observed the altercation between the two women. When he noticed Zentz holding on to a moving car, he stepped into the road and yelled for the car to stop. Murphy released Zentz' arm, causing her to fall onto the pavement. When Alte reached Zentz, she was unconscious. After shaking her, she regained consciousness and Alte helped Zentz back to her house, where he dialed 911. Zentz was taken to the hospital where she was diagnosed with "road rash" on both of her feet and legs. (Tr. p. 50). She had sustained nerve damage to the finger Murphy had bitten as well as head injuries.

On December 30, 2011, the State filed an Information charging Murphy with Count I, criminal confinement, a Class B felony, I.C. § 35-42-3-3; Count II, battery with a deadly weapon, a Class C felony, I.C. § 35-42-2-1; Count III, battery resulting in serious bodily injury, a Class C felony. I.C. § 35-42-2-1; and Count IV, battery, a Class A misdemeanor, I.C. § 35-42-2-1. On April 16 and 18, 2012, the trial court conducted a bench trial. At the conclusion of the evidence, the trial court found Murphy not guilty of criminal confinement, but guilty of all three battery Counts. On May 23, 2012, during the sentencing hearing, the trial court sentenced Murphy to four years with two years suspended and two years on probation for each felony battery Count and one year for the misdemeanor battery, with all sentences to run concurrently.

Murphy now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

4

I. *Sufficiency of the Evidence*

Murphy argues that the State failed to present sufficient evidence beyond a reasonable doubt to sustain her conviction for battery armed with a deadly weapon and battery resulting in serious bodily injury. When reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *Walker v. State*, 984 N.E.2d 642, 644 (Ind. Ct. App. 2013). We may look only to the evidence most favorable to the judgment and reasonable inferences therefrom and will affirm if we conclude that evidence of probative value exists such that a reasonable fact finder could find the elements of the underlying crime proven beyond a reasonable doubt. *Id.*

A. *Battery Armed with a Deadly Weapon*

To convict Murphy of battery with a deadly weapon, a Class C felony, the State was required to establish that Murphy knowingly or intentionally touched Zentz in a rude, insolent, or angry manner while armed with a deadly weapon. *See* I.C. § 35-42-2-1. Murphy's sole contention revolves around the element of a deadly weapon. Focusing on her admission at trial that she threw a barbecue tool at Zentz, Murphy maintains that "a grilling or barbecue tool as utilized" cannot statutorily be categorized as a deadly weapon. (Appellant's Br. p. 7).

Indiana Code section 35-41-1-8 (2010)[1] defined a deadly weapon as

(a) Except as provided in subsection (b), deadly weapon means the following:
    (1) A loaded or unloaded firearm.

---

[1] The current codification of the statute can be found at I.C. § 35-31.5-2-86 (2013).

(2) A destructive device, weapon, device, taser [] or electronic stun weapon [], equipment, chemical substance, or other material that in the manner it:
> (A) is used;
> (B) could ordinarily be used; or
> (C) is intended to be used;
is readily capable of causing serious bodily injury.

Whether a weapon is a deadly weapon is determined from a description of the weapon, the manner of its use, and the circumstances of the case. *Merriweather v. State*, 778 N.E.2d 449, 457 (Ind. Ct. App. 2002).

In describing her ordeal at trial, Zentz testified that Murphy struck her in the head with a hammer, inflicting a three-inch cut that required eleven staples to close. Used as such, the hammer falls within the purview of the statute's deadly weapon definition. *See also Morris v. State*, 364 N.E.2d 132, 138 (Ind. 1977) (a hammer is a deadly weapon when used in a harmful manner). However, by now arguing that she used a grilling tool instead, Murphy invites us to reweigh the evidence and the credibility of the witnesses. We decline her invitation. *See Walker*, 984 N.E.2d at 644.

Moreover, even assuming *arguendo* that a grilling tool was used, Murphy's claim is without merit. It is clear that whatever implement Murphy used inflicted a serious injury which required eleven staples to close. Therefore, the tool was "readily capable of causing serious bodily injury." *See* I.C. § 35-41-1-8 (2010). Consequently, based on the evidence before us, we conclude that the State presented sufficient evidence beyond a reasonable doubt to sustain Murphy's conviction of battery with a deadly weapon.

2. *Battery resulting in Serious Bodily Injury*.

6

To convict Murphy of battery resulting in serious bodily injury, a Class C felony, the State was required to establish that Murphy knowingly or intentionally touched Zentz in a rude, insolent, or angry manner which resulted in serious bodily injury. *See* I.C. § 35-42-2-1. The charging information clarifies that the "serious bodily injury" is factually defined as "unconsciousness." (Appellant's App. p. 6).

To support this conviction, the State presented evidence that Zentz was dragged down the street by a moving vehicle as Murphy was holding on to her arm through the open window. When Murphy finally released Zentz' arm, Zentz fell to the pavement. Alte rushed to Zentz' assistance and found her unconscious. After shaking her, Zentz regained consciousness and Alte helped her back to the house. Murphy now contends that this momentary unconsciousness did not amount to serious bodily harm.

Serious bodily injury is defined by statute as "bodily injury that creates a substantial risk of death or that causes (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus. I.C. § 35-41-1-25 (2010).[2]

In support of her argument, Murphy relies on *Ricks v. State*, 446 N.E.2d 648, 650 (Ind. Ct. App. 1983), in which this court affirmed Ricks' conviction for battery causing serious bodily injury where the victim lay motionless for a few minutes and appeared to be unconscious after Ricks had struck him. The victim also suffered a laceration to his forehead and a black eye, and he complained of neck, shoulder, and back pain that

---

[2] Currently codified at I.C. § 35-31.5-2-.292 (2013).

continued until the time of trial. *Id.* In considering the statutory definition of serious bodily injury, we stated:

> Whether pain is "extreme" or impairment is "protracted" is, of course, a matter of degree. We think the same is to be said of "unconsciousness" in the context of the statute. Momentary unconsciousness without more does not *necessitate* a finding of serious bodily injury. The purpose of the definitional statute is to provide meaning to the requirement that the injury be "serious." It is not its purpose to distort the meaning.

*Id.* The court then acknowledged that, "within the framework provided by the definition, it remains for the factfinder to determine the question of degree: that the bodily injury is serious." *Id.* at 650-51.

Although the *Ricks* court noted that "serious" permanent disfigurement, "extreme" pain, and "protracted" impairment are imprecise terms, "unconsciousness" is not qualified by any such vague term in the statute. *See id.* at 650. Thus, whether disfigurement, pain, or impairment constitute serious bodily injury may be subject to a degree of discretion, unconsciousness—without any further qualification—is a verifiable standard and the statute, as written, does not support a discretionary decision based on the length or the severity of the unconsciousness.

Here, Alte testified that when he reached Zentz, after being dragged by Laffin's vehicle, Zentz "appeared to be unconscious." (Tr. p. 17). He added that Zentz was "laying there and there was blood coming from her head and her knees and her face." (Tr. p. 17). She regained consciousness when Alte shook her. Later, in the hospital, Zentz was also diagnosed with road rash on both of her feet and legs. Considering the

uncontradicted testimony that Zentz was unconscious, we hold that this is sufficient to sustain a finding of battery resulting in serious bodily injury. [3]

## II. *Double Jeopardy*

Lastly, Murphy contends that her conviction for battery with a deadly weapon and battery resulting in serious bodily injury violates Indiana's Double Jeopardy clause. The Indiana Double Jeopardy clause provides, "No person shall be put in jeopardy twice of the same offense." Ind. Const. art. I, § 14. We analyze alleged violations of this clause pursuant to our supreme court's opinion in *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999), where our supreme court held that "two or more offenses are the same offense in violation of Article I, Section 14 of the Indiana Constitution, if with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Here, Murphy claims that her convictions constitute double jeopardy under the actual evidence test.

Under the actual evidence test, a defendant must demonsterate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements

---

[3] In our unpublished memorandum opinion, *D.T. v. State*, 904 N.E.2d 728, at 4 n.2 (Ind. Ct. App. 2009), we noted,

> In construing a statute, our primary goal is to determine and give effect to the intent of the legislature, but we presume the legislature intended the language used in the statute "to be applied logically and not to bring about an unjust or absurd result." Unconsciousness for less than five minutes [as in *D.T.*] hardly seems an injury on par with loss of a limb or a fetus, or with being permanently disfigured. We leave it to the Indiana Supreme Court or the Indiana Legislature, however, to clarify if necessary whether a case like this one that seems to stretch the outer boundaries of the statutory definition of serious bodily injury was intended to be covered by the statute.

of a second challenged offense. *Id*. at 53. "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective[.]'" *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002)). Therefore, we consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. *Id*. The term "reasonable probability" turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions. *Id*. at 1236. However, as long as "each conviction require[s] proof of at least one unique evidentiary fact" no violation of the actual evidence principle occurred. *Bald v. State*, 766 N.E.2d 1170, 1172 (Ind. 2002).

In a novel twist on the evidence presented at trial, Murphy now contends that "the State alleges and the court found Murphy guilty of battery resulting in serious bodily injury due to Zentz' unconsciousness which most likely would have occurred due to being struck in the head." (Appellant's Br. p. 11). Thus, focusing on the specific injury, Murphy now asserts that unconsciousness presents the "bodily injury" element to sustain both her convictions. We disagree.

The evidence reflects that after Murphy struck Zentz in the head with the hammer, the fighting continued without interruption. In fact, after Murphy used a hammer on Zentz, she continued to batter Zentz with a skateboard. It was not until after Zentz was dragged onto the street by a moving vehicle and fell to the pavement, that she was rendered unconscious. Based on the evidence before us, Zentz' head injury and unconsciousness occurred at different times and were inflicted by different means. Thus,

we conclude that Murphy's convictions do not violate Indiana's prohibition against Double Jeopardy.

## CONCLUSION

Based on the foregoing, we conclude that (1) the State presented sufficient evidence beyond a reasonable doubt to sustain Murphy's convictions for battery with a deadly weapon and battery resulting in serious bodily injury; and (2) Murphy's convictions do not violate Indiana's Double Jeopardy clause.

Affirmed.

ROBB, C. J. and KIRSCH, J. concur