**Douglas D. SMITH, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 44A03–9901–CR–19.**

Court of Appeals of Indiana.

Oct. 29, 1999.

Transfer Denied Dec. 20, 1999.

---

Jeffrey W. Wible, LaGrange, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellant-defendant Douglas D. Smith appeals his convictions and sentences for

Armed Robbery,[1] a Class B felony, and two counts of Criminal Confinement,[2] a Class B felony, and his subsequent adjudication as an habitual offender.[3] Specifically, he argues that: (1) such convictions violated his right against double jeopardy; (2) the State failed to present sufficient evidence that he was an habitual offender; and, (3) his sentence violates Article 1, Section 16 of the Indiana Constitution.

## FACTS

The facts most favorable to the verdict reveal that Frank and Grace Chrobak owned and operated the Travel Inn Motel in Howe, Indiana. The Chrobak's lived with their three children in the living quarters attached to the motel's office. Smith and his family had stayed in the motel for several weeks in February of 1997.

Thereafter, on November 14, 1997, Smith returned to the motel at approximately 4:30 a.m. and rang the twenty-four-hour office bell. Frank awoke and went to the office, where he observed Smith standing outside. Frank, vaguely recognizing Smith, proceeded to unlock the door and let him in. Smith, then immediately pulled out a gun, covered his painted face[4] with a ski mask, ordered Frank to the ground, and requested to know where the money was kept. Upon retrieving $100 from the cash register, Smith requested more money. Frank responded that there was none. Smith then placed the gun to Frank's head as he handcuffed Frank. Smith lifted Frank off the ground and asked how many people were in the house. Frank responded that his wife and three children were upstairs. Smith then forced Frank upstairs to where Grace was sleeping. Upon awakening Grace, Smith ordered her to lay face first on the bed and Frank to lay on the floor. He then struck Frank on the back of his head with the gun and placed pillow cases over the Chrobaks' heads.

Wearing rubber gloves, Smith also tied Grace's hands behind her back with rope. Following more angry demands for money, Grace eventually remembered that she had $40 in a pants' pocket which Smith retrieved.

Still not satisfied with his loot, Smith asked where the children were and went to their bedroom. Upon his return, Smith threatened to kill the Chrobaks and their children, and he struck Frank in the face. During these events, Smith was communicating on a walkie-talkie with Todd Deloach, who had agreed to aid in the robbery by driving Smith's truck as the getaway vehicle.

In the meantime, Grace's brother had escaped from the house unnoticed and alerted the police. When the police arrived, the office bell rang and the telephone began ringing. Smith became frantic and decided to remove Frank's handcuffs and replace them with rope. He then placed Frank in a closet and ordered him not to move. Smith next ripped the pillow case from Grace's head and ordered her to take him to the phones, and he promptly cut the phone lines. Finally, he closed Grace in the closet with Frank and ordered them not to move or he would shoot them. Police apprehended Smith while he attempted to flee out the back.

On November 19, 1997, the State charged Smith with armed robbery and two counts of criminal confinement, each while armed with a deadly weapon. Moreover, on November 24, the State charged him as being an habitual offender. Smith's first jury trial ended in a mistrial on May 7, 1998 as a result of his misconduct, which also resulted in a finding of contempt and 180 days in jail. Thereafter, a three-day jury trial commenced on August 18, 1998, and Smith was found guilty

---

1. IND CODE § 35–42–5–1.

2. I.C. § 35–42–3–3.

3. IND.CODE § 35–50–2–8.

4. Smith said that he painted his face brown "so that [the police] would be looking for a black man and not him." Record at 534.

as charged and adjudicated an habitual offender. The trial court subsequently sentenced him to prison for twenty years for Count I, robbery; twenty years · for Count II, confinement of Frank, to be served consecutive to Count I; and twenty years for Count III, confinement of Grace, to be served concurrent to Count II. The court also enhanced Smith's prison sentence by twenty-two years for being an habitual offender. Smith now appeals.

## DISCUSSION AND DECISION

### I. Double Jeopardy

Smith first argues that his convictions for both robbery and confinement constitute multiple punishments for the same offense and thus that they violate his right against double jeopardy. Smith specifically cites the Fifth Amendment to the United States Constitution to support his double jeopardy claim. However, he then cites to several Indiana cases to argue that "the Indiana Supreme Court views convictions for confinement and robbery as violative of double jeopardy principles when the commission of the confinement is what allows the robbery to occur." Appellant's Brief at 7. Thus, he argues that our courts look beyond the statutory elements and consider the factual basis of the convictions.

### A. Federal Double Jeopardy

■ The United States Supreme Court outlined the test for determining whether two or more offenses constitute the "same offense" under the federal Double Jeopardy Clause in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Therefore, our review of alleged violations of the federal Double Jeopardy Clause is limited to the relevant statutes. *Griffin v. State*, 717

N.E.2d 73, 77–78 (Ind.1999) (citing *Grinstead v. State*, 684 N.E.2d 482, 486 (Ind. 1997)). .

To convict Smith of robbery as charged, the State was required to prove the following essential elements under the statute: Smith knowingly or intentionally took property from the Chrobaks by using or threatening the use of force on them and/or by placing them in fear while using a deadly weapon. I.C. § 35–42–5–1. Further, to convict Smith of confinement as charged, the State was required to prove the following essential elements: Smith knowingly and intentionally confined the Chrobaks without their consent while armed with a deadly weapon. I.C. § 35–42–3–3.

Applying the *Blockburger* test, we find that both the robbery charge and the confinement charges contain at least one separate and distinct element. The robbery charge requires the State to prove that Smith took property from the Chrobaks, which is not required to prove the confinement charges, and the confinement charges require the State to prove that Smith confined the Chrobaks against their will, which is not required to prove the robbery conviction. Therefore, Smith's convictions for both robbery and confinement did not violate his federal double jeopardy rights.

### B. State Double Jeopardy

While Smith does not specifically reference Article I, Section 14 of the Indiana Constitution, his analysis clearly alludes to the idea that our constitution requires a result different than that reached under federal double jeopardy jurisprudence. Because Smith's analysis so closely parallels our supreme court's recent pronouncement of the Indiana double jeopardy standard in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999), we will analyze his double jeopardy claim under our constitution.

In *Richardson*, the court developed a two-part test for determining whether two

convictions are permissible. The court explained that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49 (emphasis in original).

Having found no violation of Smith's federal double jeopardy rights under the *Blockburger* test, we also find no violation under Indiana's "analogous statutory elements test." *McIntire v. State*, 717 N.E.2d 96, 99 (Ind.1999). Thus, we move to the second test under the Indiana double jeopardy analysis, the actual evidence test, to determine whether each offense was established by separate and distinct facts. *Richardson*, at 52–53.

■ Pursuant to the actual evidence test, we will reverse one of the convictions if the defendant demonstrates that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53. Our first task in this analysis is to determine whether there was actual evidence presented at trial that the trier of fact could have used to independently establish the essential elements of the separate offenses. If there was no such evidence presented, then the inquiry is over and the Indiana Double Jeopardy Clause

has been violated. *See id.* at 54 (finding that while post-robbery conduct of pushing victim off a bridge could indicate a subsequent, factually separate battery justifying a separate conviction, there was no actual evidence presented at trial to prove the element of resulting bodily injury from this separate conduct). However, if any independent evidence was presented at trial, we must proceed to determine which of the evidentiary facts were used by the trier of fact in reaching its decision. Although not determinative, such an analysis may be informed by consideration of the jury instructions and presentations of counsel. *See id.* at 54 n. 48; *McIntire*, at 100–101.

■ In the instant case, the jury was presented with evidence of confinement well beyond that used to commit the robbery. After Smith obtained the money from the Chrobaks through use of force and threats, he removed Frank's handcuffs, bound Frank's hands with rope and placed him in a closet, ordering him not to move. Smith then ordered Grace, whose hands were still bound, to take him to the phones so that he could cut the lines. Finally, prior to his attempt to escape, he closed Grace in the closet with Frank and threatened to shot them if they moved. Thus, there was actual evidence presented at trial that the jury could have used to independently establish the essential elements of confinement.[5]

The trial court's final instructions to the jury included the reading of the State's formal informations charging robbery and

---

5. During Frank's testimony at trial, the State specifically established that the Chrobaks were placed in the closet after the money was taken from them as follows:

> Q. Frank, when you were, and your wife, were tied up and put in the closet, the $100.00 had already been taken … from your cash register downstairs. Is that right?
> A. Yes.
> Q. And the $40.00 had already been taken from your wife's pants …
> A. Yes.
> Q. …. is that correct?

> A. Correct.
> Q. And you and your wife were in the closet at the time the person was trying to escape?
> A. Yes.

R. at 464–65.
Moreover, during cross-examination of Frank, Smith's attorney asked the following question and received the following response:

> Q. So *after the robbery*, he stuffed you and the wife in the closet?
> A. Yeah.

R. at 466 (emphasis added).

two counts of criminal confinement. The confinement charges expressly alleged various acts of confinement. With respect to Frank, the charge alleged that Smith handcuffed Frank during the robbery, then tied him with a cord-type material, and finally confined him in the closet. With respect to Grace, the charge alleged that during the course of the robbery she was tied with a cord-type material and then confined in a closet. Thus, the jury was informed that the acts of confinement during the robbery, as well as those which Smith committed after the robbery, could be used to prove the criminal confinement counts.

The applicable jury instruction for the robbery charge did not allege specific acts of force but rather simply alleged that Smith used or threatened the use of force on the Chrobaks and/or placed them in fear. Thus, the instruction did not require the jury to find the existence of confinement during the robbery in order to convict for robbery. Further, in support of the robbery charge, the trial evidence and reasonable inferences establish that armed with a gun, Smith demanded money from Frank, obtained $100 and then handcuffed him. Thereafter, Smith demanded more money, struck Frank in the head multiple times and tied up Grace. Smith also threatened to kill the Chrobaks and their children during the episode. Therefore, there was evidence independent of the separate confinement charge to support the robbery.

6. In *Griffin*, the defendant argued that his convictions for conspiracy to commit robbery and robbery violated the Indiana Double Jeopardy Clause because the overt acts in furtherance of the conspiracy alleged by the State constituted the underlying offense of robbery. While the court found that the jury was instructed that, among several other acts, the completed robbery (including striking the victim on his head and rendering him unconscious, taping the victim's hands, suffocating him with a plastic bag, and taking marijuana from the victim's presence) could be used to prove the overt act element for conspiracy, the court found no double jeopardy violation.

Considering the evidence presented of confinement well beyond the robbery and the trial court's instructions for application of this evidence, we find no reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of criminal confinement may also have been used to establish the essential elements of robbery. In one of the companion cases to *Richardson*, our supreme court noted that "[t]o establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative or remote." *Griffin v. State*, 717 N.E.2d 73, 89 (1999).[6] Applying the actual evidence test, Smith's convictions for robbery and two counts of criminal confinement are thus not the same offense, and there is no violation of the Indiana Double Jeopardy Clause.

## II. Sufficiency of the Habitual Offender Evidence

Smith next contends that the State presented insufficient evidence to support his adjudication as an habitual offender. Specifically, with respect to the Michigan documents admitted by the State to establish two prior unrelated felony convictions, Smith argues that the proper individual did not sponsor the documents at trial and one of the documents did not indicate that he was convicted and adjudged a felon for absconding on bond.[7]

■ Initially, we note that Smith cites *Mott v. State*, 547 N.E.2d 261, 264–65 (Ind. 1989), apparently for the proposition that documentary evidence from a different jur-

Specifically, the court noted that the jury instruction regarding robbery did not require the jury to find the existence of a prior agreement to rob in order to convict for robbery. Moreover, the court found that there was substantial evidence of advance preparation presented at trial.

7. Smith concedes that if they were properly admitted, the court documents did sufficiently establish a prior unrelated felony conviction and resulting sentence for breaking and entering. Appellant's Brief at 10; R. at 594–97.

isdiction in an habitual offender proceeding must be authenticated by testimony from the person officially charged with the retention and maintenance of such court documents. Appellant's Brief at 11. However, *Mott* does not in any way support such a requirement. Rather, in *Mott*, the court made clear that supporting testimony was unnecessary because "the Deputy Clerk of the Court of Common Pleas of Mercer County, Ohio, certified under seal that the documents in question were true and accurate copies of the original documents on file in that office." *Id.* at 265. Here, the Clerk of the Circuit Court of the County of St. Joseph made similarly sufficient certifications under seal,[8] requiring no sponsor.

Further, in regard to Smith's second contention, we note that IND.CODE § 35–50–2–1(b) defines a felony conviction as "a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year." It is the length of the term of imprisonment that is important, not the classification given by the other jurisdiction. *See Stewart v. State*, 688 N.E.2d 1254, 1258 (Ind.1997). In the instant case, the court documents reveal that Smith pled guilty on June 6, 1983 to absconding on bond, as a second felony offender, and was sentenced to a minimum term of one and a half years with a maximum term of six years.[9] Therefore, in addition to the breaking and entering felony conviction, the documents sufficiently established a prior unrelated felony conviction for absconding on bond.

### III. Sentence

Finally, Smith argues that his sentence violates Article I, Section 16 of the Indiana Constitution[10] because his sentence is disproportionate to the circumstances of his offenses. While he acknowledges the stringent standard applied to proportionality claims, he urges that we redefine the standard in light of "the potential harshness of the Blockburger analysis." Appellant's Brief at 12.

We decline Smith's invitation and note that the potential harshness he alleges in the *Blockburger* analysis is now presumably softened by Indiana's separate double jeopardy analysis announced in *Richardson*. Under the current standard, we will only reverse a legislatively sanctioned sentence as unconstitutional by reason of its length, "if it is so severe and entirely out of proportion to the gravity of the offense committed as to shock public sentiment and violate the judgment of a reasonable people." *Miller v. State*, 709 N.E.2d 48, 50 (Ind.Ct.App.1999). Smith offer's no cogent argument as to how his sentence is disproportionate to the nature

---

**8.** The Clerk certified under seal that: "the annexed is a true and compared copy of * *JUDGMENT OF SENTENCE* * entered in the above entitled cause by said Court, as it appears on record in my office. That I have compared the same with the original, and it is a true transcript therefrom, and of the whole thereof." R. at 594, 600.

**9.** Moreover, we note that Smith appeared to concede at trial that, as charged, absconding on bond was a felony. The following dialogue took place at trial while the State was attempting to establish that the underlying offense for the absconding on bond charge was a felony:

> [STATE]: The absconding on bond charge, to be a felony charge, where it's charged, was charged in your case, would the under-

lying offense have had to have been a felony charge as well?
> [DEFENSE]: I'm gonna object, Your Honor, and ask that that be stricken. That's not relevant to the proceedings herein. The proceedings are whether or not there's been a conviction.
> [STATE]: As long as counsel doesn't intend to attack in anyway the absconding on bond charges, in this case as a felony, I would agree, Your Honor. But . . .
> [DEFENSE]: I believe the document, Your Honor, speaks for itself.
> JUDGE: The document speaks for itself.
> [STATE]: Okay. That's fine.
> R. at 599.

**10.** Article I, Section 16 provides in relevant part: "All penalties shall be proportioned to the nature of the offense."

of his offense. Therefore, he has waived review of this issue. *See* Ind. Appellate Rule 8.3(A)(7); *Flynn v. State,* 702 N.E.2d 741, 744 (Ind.Ct.App.1998), *trans. denied* ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.")

■ Waiver notwithstanding, we note that the trial court enhanced Smith's sentences for robbery and confinement based on a finding of several aggravating circumstances and no mitigating circumstances. Specifically, the court noted Smith's past criminal history, failed attempts at rehabilitation, risk of future criminal activity, escape attempt while being held for these offenses, awareness that children were present while he was committing the crimes and lack of remorse. Smith does not challenge any of these aggravating circumstances. In addition to these circumstances, we would add that Smith carefully planned these crimes by enlisting the aid of an accomplice; carrying a gun; painting his face so that he would appear to be an African–American man; bringing handcuffs, scissors and rope to restrain the victims and cut the phone lines; and using his own child's walkie-talkie set to communicate with his accomplice. Moreover, we note that twenty-two years of Smith's sixty-two year sentence was for being an habitual offender. In light of the aggravating circumstances and the nature of Smith's offenses, we cannot find that his sentence would shock public sentiment and violate the judgment of a reasonable person.

### CONCLUSION

In sum, we find that Smith's convictions for robbery and two counts of criminal confinement did not violate his rights against double jeopardy under either the United States Constitution or the Indiana Constitution. Further, we conclude that the State presented sufficient evidence for his adjudication as an habitual offender. Finally, we hold that Smith's sixty-two year sentence does not violate Article I, Section 16 of the Indiana Constitution.

Judgment affirmed.

SHARPNACK, C.J., and MATTINGLY, J., concur.