**Raymond VANZANDT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0002–CR–62.**

Court of Appeals of Indiana.

June 20, 2000.

Transfer Denied Aug. 25, 2000.

Gregory Bowes, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellant-defendant Raymond Vanzandt appeals his convictions for Robbery,[1] a class B felony, Carrying a Handgun Without a License,[2] a class A misdemeanor and two counts of Criminal Confinement,[3] class B felonies. Specifically, he contends that the trial court improperly allowed identification testimony, denied his motion for a mistrial, and imposed multiple sentences for a single offense.

### FACTS

The facts most favorable to the verdict reveal that Vanzandt entered Jack's Pizza at 3940 South Keystone in Indianapolis at approximately 10:40 p.m. on December 6, 1998. He approached the employee behind the counter, Assistant Manager Kathryn Remington ("Remington"), and indicated that he needed cab service and a drink. Philip Kite ("Kite"), the other employee on duty, produced a telephone directory and Remington tried without success to find a telephone number for cab service. Remington went into a back room to obtain a second telephone directory. When she returned, she observed Vanzandt holding Kite at gunpoint.

Vanzandt initially ordered both employees to get down on the floor, but soon ordered Kite to get up and open the cash register. Kite emptied the cash register, gave the money to Vanzandt, and laid down on the floor once again. Vanzandt asked if there was additional money on the premises but when Kite offered money from his own pocket, Vanzandt refused to take it. Vanzandt then inquired about keys to a vehicle parked in front of the store. Kite replied that the keys were in the ignition. After pointing the gun at Remington and Kite and ordering them to remain on the floor, Vanzandt left the store and drove away in Kite's vehicle.

Remington and Kite immediately reported the robbery and provided a description of the robber and the missing vehicle as well as a tape from the store's video camera. Vanzandt was soon apprehended at a nearby Dollar Inn. Vanzandt was charged with robbery, two counts of confinement and carrying a handgun without a license. At the conclusion of a jury trial that commenced on August 23, 1999, he was convicted of all charges.

---

1. IND. CODE § 35–42–5–1.

2. IND. CODE § 35–47–2–1.

3. IND. CODE § 35–42–3–3.

Vanzandt was subsequently determined to be an habitual offender. The trial court imposed upon Vanzandt a twenty year sentence for robbery, a twenty year sentence for confinement of Kite, enhanced by thirty years because of his habitual offender status, and a twenty year sentence for confinement of Remington.[4] Vanzandt now appeals.

## DISCUSSION AND DECISION

### I. Admission of Identification Testimony

Vanzandt first contends that any testimony from Remington and Kite identifying Vanzandt as the robber should have been excluded. Specifically, he claims that Kite failed to select Vanzandt's photograph from the first photographic array presented to him and ultimately identified Vanzandt only as a result of a second, unduly suggestive photographic array.

 Due process of law under the Fourteenth Amendment to the United States Constitution requires suppression of testimony concerning a pre-trial identification when the procedure employed is impermissibly suggestive. *Harris v. State*, 716 N.E.2d 406, 410 (Ind.1999). A photographic array is impermissibly suggestive if it raises a substantial likelihood of misidentification given the totality of the circumstances. *Id.* Factors to be considered in evaluating the likelihood of a misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, and (4) the level of certainty demonstrated by the witness. *Id.*

 Remington testified that Vanzandt approached the pizza store counter where she was working, placed a drink order and ostensibly waited for cab service. R. at 180. Thus, she was able to observe Van-

zandt face-to-face for a period of approximately five minutes before the commission of the robbery. She testified to her certainty that her identification of Vanzandt was correct. R. at 200. Kite testified that he attempted to assist Vanzandt in the pizza store and "got a decent look at him" both before and after Vanzandt pulled a gun. R. at 240. Indianapolis Police Officer Kim Cissell, the officer first reporting to the crime scene, testified that Remington and Kite provided a detailed description of Vanzandt including race, height, weight, hairstyle and particular items of clothing. R. at 306.

Moreover, the record does not support Vanzandt's contention that Kite initially failed to select his photograph from a photographic array. Kite testified to his belief that he selected a photograph of someone other than Vanzandt in the first photographic array, but admitted that his suspicion was not confirmed or denied by the officer present. R. at 240. Indianapolis Police Officer Barry Jeffries then testified that Kite had actually selected a photograph of Vanzandt from the first photographic array. R. at 356.

The totality of the circumstances do not lead to the conclusion that impermissibly suggestive procedures likely resulted in a misidentification of Vanzandt. Thus, evidence of the pre-trial and in-court identifications was properly admitted.

### II. Mistrial

Vanzandt next claims that he was entitled to a mistrial after Kite responded to a request to identify State's Exhibit 3: "That's, I guess you would call them mug shots." R. at 220. Outside the presence of the jury, the trial court inquired whether Kite had any knowledge of the photographs' origin and, when Kite responded that he did not, the court instructed the prosecutor to elicit that information during subsequent testimony. The prosecutor did

---

4. The conviction for carrying a handgun without a license was merged with the robbery conviction.

so. Additionally, the trial court instructed the jury to disregard Kite's previous response and denied the motion for mistrial.

■ A mistrial is an extreme remedy invoked only when no other curative measure can rectify the situation. *Kent v. State*, 675 N.E.2d 332, 335 (Ind.1996). A trial court's ruling on a motion for a mistrial is afforded great deference on appeal because the trial court is in the best position to evaluate the circumstances and their impact on the jury. *Id.* Therefore, the trial court's determination will be reversed only where an abuse of its discretion can be established. *Hollowell v. State*, 707 N.E.2d 1014, 1024 (Ind.Ct.App. 1999). To prevail, the appellant must establish that he was placed in a position of grave peril to which he should not have been subjected. *Id.* Where the jury is admonished by the trial judge to disregard what occurred or other reasonable curative measures are taken, ordinarily the court's refusal to grant a mistrial is not reversible error. *Walker v. State*, 497 N.E.2d 543, 544 (Ind.1986).

■ A verbal reference to "mug shots" is generally proscribed as the use of the term may be prejudicial to a defendant. *Scott v. State*, 426 N.E.2d 1298, 1300 (Ind.1981). However, the mere mention of "mug shots" is not reversible error *per se*. *Coleman v. State*, 490 N.E.2d 325, 327 (Ind.1986). Reversal is not required if the reference is unintentional or the evidence of guilt is strong. *Id.*

■ Here, the trial court found that Kite's reference to "mug shots" was inadvertent. There was no deliberate attempt by the prosecution to introduce the term. Moreover, the prosecutor elicited testimony to establish that Kite did not have actual knowledge that the photographs in questions were or were not "mug shots." Finally, there was strong evidence of Vanzandt's guilt, specifically, a videotape of the robbery, fingerprint evidence linking Vanzandt to the robbery, and the corroborative testimony of two victims. Vanzandt was not placed in a position of grave peril necessitating a mistrial.

### III. Double Jeopardy

Finally, Vanzandt contends that his convictions for robbery and two counts of confinement constitute multiple punishments for the same offense in violation of IND. CONST. art. I, § 14.[5] He relies upon our supreme court's recent pronouncement of the Indiana double jeopardy standard in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999) to support his argument that the Indiana Constitution "provides broader protection than the federal constitution's double jeopardy provisions." Appellant's brief at 8.

■ In *Richardson*, the court developed a two-part test for determining whether two convictions are permissible. "[T]wo or more offenses are the 'same offense' in violation of Article I, Section 14

---

5. Vanzandt does not argue that his convictions violate the Double Jeopardy provisions of the United States Constitution. In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court outlined the test for determining whether two or more offenses constitute the "same offense" under the federal Double Jeopardy Clause: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." This court has recently applied the *Blockburger* test to determine whether a robbery conviction under I.C. § 35–42–5–1 and a criminal confinement conviction under I.C. § 35–42–3–3 arising from contemporaneous events violated a defendant's federal double jeopardy rights. *Smith v. State*, 717 N.E.2d 1277 (Ind.Ct.App.1999), *trans. denied.* Upon examination of the statutory elements, the court found that both the robbery charge and confinement charge contained at least one separate and distinct element. The robbery charge required the State to prove that the defendant took property from another, which is not required to prove a confinement charge, and the confinement charge required the State to prove that the defendant confined another person against their will, which is not required to prove a robbery charge. *Id.* at 1280.

of the Indiana Constitution if, with respect to *either* the statutory elements of the charged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* at 49 (emphasis in original). Consistent with the absence of a federal double jeopardy violation under the *Blockburger* test, simultaneous convictions of robbery and confinement charges do not violate Indiana's "analogous statutory elements test." *Smith*, 717 N.E.2d at 1281 (citing *McIntire v. State*, 717 N.E.2d 96, 99 (Ind.1999)). However, under the second aspect of the Indiana double jeopardy analysis, the actual evidence test, we must determine whether each offense was established by separate and distinct facts. As explained in *Richardson*:

> Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id.* at 53.

■ To convict Vanzandt of robbery, a Class B felony, as charged, the State was required to prove that he "knowingly, while armed with a deadly weapon, a handgun, took property from Philip Kite by putting him in fear or by using or threatening the use of force." R. at 22. To convict Vanzandt of two counts of criminal confinement, a Class B felony, as charged, the State was required to prove that he "while armed with a deadly weapon, a handgun, confined Philip Kite and Kathryn Remington, by forcing them to lie down on the floor." R. at· 22. Vanzandt was not charged with robbery of Remington.

The evidence adduced at trial disclosed that Vanzandt, armed with a handgun, ordered Kite and Remington to lie down on the floor while he effected his robbery and obtained access to the getaway vehicle. With regard to Kite, identified in the charging information as the robbery victim, compelling him to lie on the floor is not separate and apart from the force used to effect the robbery.

The State urges this court to affirm each of Vanzandt's convictions, relying upon *Smith*, wherein the appellant's convictions of robbery and two counts of criminal confinement were upheld notwithstanding his claim of a violation of the Indiana Constitution's prohibition against double jeopardy. However, we find *Smith* clearly distinguishable from the instant case. The evidence adduced in *Smith* established that *after* Smith completed the robbery, he bound one victim's hands, compelled the other victim to lead him to the telephone, placed both victims in a closet and threatened to shoot them if they moved. The confinement charges expressly alleged various acts of confinement. The instruction for robbery did not require the jury to find the existence of confinement during the robbery in order to convict for robbery. There was actual evidence presented at trial that the jury could have used to independently establish the essential elements of confinement apart from the robbery.

Here, the State charged that Vanzandt robbed Kite while armed with a handgun and confined both Kite and Remington while armed with a handgun. There is an absence of evidence to establish the essential elements of confinement of Kite independent of the robbery of Kite. The force or threat of force exerted by Vanzandt against Kite was that exerted to accomplish the robbery. Vanzandt has demonstrated a reasonable possibility that the jury used the same evidentiary facts to establish criminal confinement of Kite as a Class B felony as it did to establish the essential elements of robbery of Kite as a Class B felony. To remedy the resulting

violation of the Indiana Double Jeopardy Clause, we are compelled to vacate the conviction for criminal confinement of Kite. Vanzandt was not convicted of multiple offenses against Remington and thus does not prevail on his double jeopardy claim with regard to his conviction for confinement of Remington.

### CONCLUSION

In light of our resolution of the issues set forth above, we conclude that Vanzandt was not denied a fair trial because of the admission of identification testimony, nor was he entitled to a mistrial. However, the conviction for criminal confinement of Kite was in violation of the prohibition against double jeopardy embodied in Article I, § 14 of the Indiana Constitution. Accordingly, we affirm the convictions for robbery and criminal confinement of Kathryn Remington. We vacate the conviction for criminal confinement of Philip Kite and remand with instructions to resentence in accordance with this opinion.

Affirmed in part; reversed in part; and remanded with instruction to resentence.

RILEY, J., and KIRSCH, J., concur.