# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**TIMOTHY J. O'CONNOR**
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GARY SISTRUNK,                           )
                                         )
    Appellant-Defendant,                )
                                         )
              vs.                      )    No. 49A05-1211-CR-567
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.                 )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
The Honorable Christina R. Klineman, Master Commissioner
Cause No. 49G05-1202-FB-10112

**May 19, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Gary Sistrunk appeals his convictions for robbery and criminal confinement as class B felonies.[1] Sistrunk raises two issues, which we revise and restate as follows:

I.      Whether his convictions for robbery and criminal confinement violate Indiana's prohibition against double jeopardy; and

II.     Whether the trial court erred in denying his request for an order for public funds to pay for an expert witness.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

At approximately 7:00 p.m. on February 5, 2012, Sistrunk entered a gas station in Marion County, Indiana, where Christina Busch was working alone in the store. Sistrunk asked Busch for "a black [inaudible] cigar," and Busch handed him the cigar. Transcript at 25. Sistrunk placed a one-dollar bill on the counter, Busch told him that the cigar was $1.17, and he "threw out a quarter out of his pocket." Id. Busch opened the cash register and placed the cash in the drawer, looked up before handing the change back to Sistrunk, and observed that "he had a gun sitting at me." Id. Sistrunk leaned over the counter closer to Busch, pointed the gun at her, and ordered her to give him all of the money in the drawer. Busch asked "are you serious," and Sistrunk said "I'm not playing with you." Id. Busch handed all of the money in the cash drawer to him. He ordered her to give him the money out of the safe, and Busch told him that she was unable to open the safe, that she "had 2 safe drops sitting there that he could have," that "[i]f he wanted to come back there he could look," and that she "didn't want him shooting [her]." Id. Sistrunk took the

---

[1] This appeal was taken from cause number 49G05-1202-FB-010112 ("Cause No. 112"). We also issue an opinion in Sistrunk v. State, No. 49A04-1210-CR-527 (Ind. Ct. App. May 19, 2014), an appeal taken from Sistrunk's convictions for robbery and criminal confinement under cause number 49G05-1202-FB-10061 ("Cause No. 61").

two safe drops. As Busch was giving Sistrunk the money, he "kept telling [her] not to press the button," which she took to mean the emergency button for the store. Id. at 26. Sistrunk "told [Busch] to sit on the ground and [she] sat on the ground, he stood there for a minute and then [] walked out the door," and she "waited for about 2 minutes to call the police." Id. Beech Grove Police Detective Jill Lieter responded to the robbery and spoke with Busch at the police station. Detective Lieter obtained a copy of a video surveillance recording[2] of the suspect from the general manager of the gas station and, through Crime Stoppers, obtained the name of Sistrunk as the person in the recording. On February 9, 2012, Detective Lieter presented a photo array to Busch, informed her that the suspect's photograph may or may not be included in the array and that she should not identify any photograph if she was unsure, and Busch identified Sistrunk as the person who committed the robbery.

On February 14, 2012, the State charged Sistrunk with robbery and criminal confinement as class B felonies. On March 9 and March 23, 2012, represented by private counsel, Sistrunk filed motions which requested the court to order the County Public Defender's Office to pay for the reasonable expenses of an expert witness on the issue of eyewitness identification.[3] At a pretrial conference on July 23, 2012, the Marion County Public Defender ("MCPD") indicated to the trial court that it did not support Sistrunk's request for public funds, and the court denied Sistrunk's application. On October 4, 2012, the court conducted a bench trial at which Busch and Detective Lieter testified and

---

[2] There were approximately seven video cameras in the gas station.

[3] These motions were filed and the July 23, 2012 hearing was held under Cause Nos. 112, 61, 62, and 63.

the State presented the video recording of the robbery.[4]  In closing arguments, Sistrunk's

defense counsel argued: "I think this is kind of a classic eyewitness ID case.  The person

is told, I picked the right person and at that point their confidence goes to 100 percent."

Id. at 64.  The court stated:

> [T]here is no doubt that the identification alone and the video alone are not
> proof beyond a reasonable doubt.  However, in conjuction [sic] when I
> watched the video – the reason I went back and watched it is because the
> second scene of Mr. Sistrunk walking into the shop is nearly the identical
> angle that I have right here, it's transposed, but nearly identical.  And I
> found it to be very good evidence that Mr. Sistrunk is in fact the person that
> Christina Busch pointed out.  So while I agree that there are all sorts of ID
> issues, if it was just her or if it was just the video – together the State has
> proven their case beyond a reasonable doubt . . . .

Id. at 65.  The court found Sistrunk guilty of robbery and criminal confinement as

charged and later sentenced Sistrunk to six years for each conviction to be served

concurrently with each other and consecutive to his sentence under Cause No. 61.

DISCUSSION

I.

The first issue is whether Sistrunk's convictions for robbery and criminal

confinement as class B felonies violate Indiana's prohibition against double jeopardy.

The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the

same offense."  IND. CONST. art. 1, § 14.  The Indiana Supreme Court has held that "two

or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana

Constitution, if, with respect to either the statutory elements of the challenged crimes or

the actual evidence used to convict, the essential elements of one challenged offense also

---

[4] A video recording of the robbery was admitted as State's Exhibit 2 and a slow-motion version
of the recording was admitted as State's Exhibit 2A.

establish the essential elements of another challenged offense." Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999).

Sistrunk argues that his convictions for robbery and criminal confinement violate Indiana's prohibition against double jeopardy based upon the actual evidence test.[5] Under the actual evidence test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. Lee v. State, 892 N.E.2d 1231, 1234 (Ind. 2008). To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. Id. The Indiana Supreme Court has determined the possibility to be remote and speculative and therefore not reasonable when finding no sufficiently substantial likelihood that the trier of fact used the same evidentiary facts to establish the essential elements of two offenses. Hopkins v. State, 759 N.E.2d 633, 640 (Ind. 2001) (citing Long v. State, 743 N.E.2d 253, 261 (Ind. 2001); Redman v. State, 743 N.E.2d 263, 268 (Ind. 2001)).

Application of this test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the fact-finder's perspective. Lee, 892 N.E.2d at 1234. "[U]nder the . . . actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the

---

[5] This court has noted that "[s]imultaneous convictions of robbery and confinement charges do not violate Indiana's statutory elements test." Merriweather v. State, 778 N.E.2d 449, 454 (Ind. Ct. App. 2002) (citation omitted).

essential elements of a second offense." Spivey v. State, 761 N.E.2d 831, 832-833 (Ind. 2002). In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel. Lee, 892 N.E.2d at 1234; Spivey, 761 N.E.2d at 832. Generally, double jeopardy does not prohibit convictions of confinement and robbery when the facts indicate that the confinement was more extensive than that necessary to commit the robbery. Merriweather v. State, 778 N.E.2d 449, 454 (Ind. Ct. App. 2002) (citing Hopkins, 759 N.E.2d at 639; Thy Ho v. State, 725 N.E.2d 988, 993 (Ind. Ct. App. 2000)).

Sistrunk specifically argues that he ordered an employee to sit on the floor, paused for a moment, and then walked out the door, that every act of robbery will, of necessity, involve some amount of confinement, and that there was a reasonable possibility that the trial judge used the same evidence to convict him of both robbery and criminal confinement. The State argues that Sistrunk did not give the order for Busch to sit down on the floor until he had committed all the elements of robbery by taking the safe drops from Busch's presence, that the confinement charge was drafted to ensure that only interference with Busch's liberty occurring independently of the robbery could be used to convict Sistrunk of confinement, and thus that Sistrunk's convictions do not violate Indiana's prohibition against double jeopardy.

Robbery consists of taking property "by using or threatening the use of force" or "by putting any person in fear." Ind. Code § 35-42-5-1. Criminal confinement consists of confining a person or removing them by force or threat of force from one place to another. Ind. Code § 35-42-3-3. The Indiana Supreme Court has stated that "where the

6

confinement of a victim is greater than that which is inherently necessary to rob them, the confinement, while part of the robbery, is also a separate criminal transgression." Hopkins, 759 N.E.2d at 639. The State's charging information for robbery alleged that Sistrunk "on or about February 5, 2012, did knowingly, while armed with a deadly weapon, that is: a handgun, take from the person or presence of Christina Busch property, that is: United States currency, by putting Christina Busch in fear or by using or threatening the use of force on Christina Busch." Appellant's Appendix at 34. The charging information for criminal confinement alleged that Sistrunk "on or about February 5, 2012, did knowingly, while armed with a deadly weapon, that is: a handgun, confine Christina Busch, without the consent of Christina Busch, by ordering her to sit down on the floor." Id.

The evidence presented at trial shows that Sistrunk's confinement of Busch extended beyond what was necessary to rob her. The evidence shows that Sistrunk held a gun to Busch and ordered her to hand over all the money in the cash drawer, that he ordered her to retrieve the money from the safe, and that, after she explained that she could not access the safe but that he could take the safe drops, Sistrunk took the safe drops. As Busch was giving Sistrunk the money, he "kept telling [her] not to press the button." Transcript at 26. After he had taken the safe drops, Sistrunk "told [Busch] to sit on the ground," she "sat on the ground," Sistrunk "stood there for a minute," and then he walked out the door. Id. In light of Sistrunk's actions of threatening Busch by pointing a handgun at her, of taking the cash from the register drawer and the safe drops, and by instructing her not to press the emergency button, it was not necessary for Sistrunk to

7

further require Busch to sit down on the floor in order to rob her. His actions to effectuate the robbery and that of ordering Busch to sit on the floor were separate criminal transgressions.

Under the circumstances, we find no sufficient substantial likelihood, and thus cannot say that Sistrunk has demonstrated a reasonable possibility, that the trial court based its determination of guilt on the criminal confinement count upon the evidence used to find him guilty of robbery. Accordingly, Sistrunk's convictions do not violate his right against double jeopardy. See Hopkins, 759 N.E.2d at 640 (holding that the defendant's confinement of his victims extended beyond what was necessary to rob them and noting that it was not necessary to force the victims into the basement or later to stay in the basement to rob them and that the confinement was a separate criminal transgression from the robberies themselves).[6]

However, we also note that the same evidence, namely, Sistrunk's act of being armed with a deadly weapon, was used to enhance both his robbery conviction and his criminal confinement conviction to class B felonies. See Ind. Code § 35-42-5-1 (governing the offense of robbery and noting the offense is a class C felony except that "the offense is a Class B felony if it is committed while armed with a deadly weapon"); Ind. Code § 35-42-3-3 (governing the offense of criminal confinement and noting that the

_____

[6] In support of his argument, Sistrunk points to Vanzandt v. State, in which this court concluded that the defendant's convictions for robbery and criminal confinement violated double jeopardy as there was "an absence of evidence to establish the essential elements of confinement of [the victim] independent of the robbery of [the victim]" and that "[t]he force or threat of force exerted by Vanzandt against [the victim] was that exerted to accomplish the robbery." 731 N.E.2d 450, 455 (Ind. Ct. App. 2000), trans. denied. "The evidence adduced at trial disclosed that Vanzandt, armed with a handgun, ordered [the two victims] to lie down on the floor while he effected his robbery and obtained access to the getaway vehicle." Id. There is no indication that the confinement in Vanzandt went beyond that necessary to effectuate the robbery. Sistrunk ordered Busch to the floor after the robbery was complete. We find Vanzandt distinguishable.

offense is a class D felony except as provided in subsection (b) and that, under subsection (b), the offense is "a Class B felony if it [] is committed while armed with a deadly weapon").

In Miller v. State, the defendant placed a knife to the victim's throat and then later pressed the knife on her back while he committed various offenses. 790 N.E.2d 437, 438 (Ind. 2003). The defendant was convicted of burglary as a class A felony, two counts of criminal deviate conduct as class A felonies, criminal confinement as a class B felony, robbery as a class B felony, resisting law enforcement as a class A misdemeanor, and battery as a class A misdemeanor. Id. On appeal, the defendant claimed a violation of the double jeopardy provision of the Indiana Constitution because his use of a single weapon was used to elevate the sentencing classification of several of his convictions. Id. The Indiana Supreme Court observed that "[a]lthough not raised by the parties, we have recognized a series of rules of statutory construction and common law that supplements the constitutional protections afforded by the Indiana Double Jeopardy Clause," id. at 439 (citing Pierce v. State, 761 N.E.2d 826, 830 (Ind. 2002); Spivey, 761 N.E.2d at 834), that "Pierce applied the rule that two crimes may not be enhanced by the same bodily injury," and that "[t]his was an application of the broader rule previously expressed by Justice Sullivan prohibiting conviction and punishment 'for an enhancement of a crime where the enhancement is imposed for the *very same behavior* or harm as another crime for which the defendant has been convicted and punished.'" Id. (citing Richardson, 717 N.E.2d at 56 (Sullivan, J., concurring)). The Court held that "[t]he repeated use of a weapon to commit multiple separate crimes is not 'the very same behavior' precluding its

use to separately enhance the resulting convictions" and that "[r]ather, the use of a 'single deadly weapon during the commission of separate offenses may enhance the level of each offense.'" Id. (citing Gates v. State, 759 N.E.2d 631, 633 n.2 (Ind. 2001)). The Court thus declined to find error in the defendant's enhanced sentences. Id.

In his concurring opinion, Justice Sullivan noted that "[w]hat justifies the multiple enhancements here is the *repeated* use of the knife by the defendant in committing crimes for which he was convicted," that "[h]ad the defendant merely been armed with the weapon while committing multiple crimes, and not actually used it (or used it only once), I think it would be improper to impose more than one enhancement," and that, "[i]n such a circumstance, the multiple enhancements would be for the 'very same behavior' and thus violate the rule against multiple enhancements to which this Court subscribed in Guyton v. State, 771 N.E.2d 1141, 1143 (Ind. 2002) (citing Pierce[], 761 N.E.2d [at] 830 [], citing in turn Richardson[], 717 N.E.2d [at] 55 [] (Sullivan, J., concurring); id. at 57 (Boehm, J., concurring in result))." Id. (Sullivan, J., concurring).

In this case, Sistrunk did not repeatedly use the handgun or use it more than once in committing the offenses for which he was convicted. Busch testified that Sistrunk pointed the gun at her and ordered her to give him the money from the register drawer. Busch also testified that, after Sistrunk had taken the safe drops, he told her to sit on the ground, but she did not testify that he used the weapon a second time. While Sistrunk was still armed with the weapon, the evidence does not show that he used it repeatedly or more than once, and thus, in light of Miller, it is improper here to impose more than one enhancement based on the "very same behavior" of pointing the gun once and then

10

remaining armed throughout the incident. See id. at 438-439. Accordingly, we remand with instructions to enter Sistrunk's conviction for criminal confinement as a class D felony and to impose a sentence consistent therewith, to be served concurrent with his sentence for the robbery conviction, resulting in no impact on his aggregate sentence.

## II.

The next issue is whether the trial court abused its discretion in denying Sistrunk's request for funds for an expert witness. Sistrunk's March 23, 2012 motion states that, in each of the four cases against him, the State's evidence would rest largely on eyewitness testimony, that none of the witnesses recognized the robber from previous interactions, that it was defense counsel's understanding that nothing that was found during the search of Sistrunk's house had been linked to any of the crimes, and that some of the witnesses stated that they were close to one hundred percent certain that the picture of Sistrunk is of the same man that robbed them. The motion states:

> If an expert witness were allowed to testify, defense counsel expects the expert witness would testify as follows: When people are under extreme stress, adrenaline interferes with the ability to form accurate long term memories. As a result, the ability to make an accurate eyewitness identification is reduced. When a gun is involved, the ability to make an accurate eyewitness identification is further reduced, because people have a tendency to focus on the gun rather than the face of the person holding the gun. When an individual is shown a photo lineup of individuals, the individual often picks the person that looks most like the robber. The individual then, because they are not under extreme stress, forms a new memory based on the photograph in the photo array. When asked to make an in court identification, the person uses their memory of the photo-array to make the in court identification rather than their memory of the actual robbery. Most importantly, there is little to no correlation between a testifying witnesses [sic] confidence and accuracy. In other words, a witness who testifies that they are 100% certain about ID is no more accurate than a witness who says that they are 50% certain about ID. Additionally, the testifying witness appears extremely credible. The

11

witness is not being dishonest. The witness is merely unaware of the psychological process that has occurred in their own mind.

Appellant's Appendix at 61-62. The motion further stated that eyewitness testimony will be the only real substantive evidence of guilt, that according to the Department of Correction ("DOC") it costs $20,000 to incarcerate a person for a period of one year, and that if he were sentenced to the absolute minimum and received good credit time the cost of incarceration would be $60,000. The motion also stated that the hourly rate of Dr. Roger Terry, Sistrunk's proposed expert witness, was $100 and that, if a flat fee were preferred and the cases were not joined for trial, he would charge $5,000 to review all of the evidence and to give an opinion on what factors might have affected the witnesses' ability to make an accurate identification, and if he were asked to begin preparing for testimony at trial this would cost an additional $10,000. The motion stated that security footage existed and that, depending on the quality of the footage, expert testimony regarding eyewitness testimony could become more or less helpful.

At the pretrial conference on July 23, 2012, the court noted that Sistrunk requested the court to order the MCPD to expend budgeted funds on his behalf and that it was the understanding of the court that there was a protocol or process that the MCPD followed in determining whether such a request would be granted. The court asked the MCPD, represented by Robert Hill, to help with the record. Hill testified that the MCPD requires a defendant to show a legitimate need for the requested service and that budgeted funds must be available. Hill further testified that the MCPD did not have any funds remaining in its budget for the request and that he did not believe there had been an adequate showing of need and a demonstration that the requested funds would in fact be beneficial

12

to the case. Hill indicated that an eyewitness expert is a legitimate area of inquiry in the right case but that he did not think this was the right case. The court then stated a familiarity with some literature that experts in this area "will not say the witness is right or wrong" and "[t]hey'll simply highlight the possibility of mistake." Supplemental Transcript at 70. Sistrunk's counsel agreed that the expert "raises his answers in terms of these are potential problems because he can't offer an opinion on whether or not a witness has testified truthfully." Id. The court denied Sistrunk's request for public funds.

Sistrunk contends that the court abused its discretion and violated his right to a fundamentally fair trial in denying his application for public funds. He submits that the only contested issue was the identity of the perpetrator of the robbery, that the court concluded it was only the combination of the video and eyewitness identification that allowed the finding of guilt, that had he been provided the benefit of an expert to discredit the eyewitness's identification, the only remaining evidence of identity would have been the recording, which by the court's admission would not have been sufficient to support his conviction. Sistrunk asserts that he demonstrated an expert was necessary pursuant to the factors set forth in Scott v. State, 593 N.E.2d 198, 199 (Ind. 1992), that the expert's services would be directed to a substantial question, and that the expert's testimony would be admissible at trial. He argues that the severity of the possible penalty militates in favor of an expert, which suggests that a defendant with means facing the possibility of lengthy incarceration would be willing to spend a great deal on an expert. He notes that his proposed expert would have charged an hourly fee of $100 or a single flat fee of $10,000 to prepare for and testify at trials in all four cases, that neither the trial

court nor the MCPD suggested that those fees were excessive, and that the amount is a fraction of what it would cost to incarcerate him for one year. He also argues that, without an identification expert, it was virtually impossible for him to attack the testimony of Busch and that "[t]he help of an expert who could have illuminated what is counterintuitive but true – that eyewitnesses, even when they report being 'certain,' are often mistaken – would have been invaluable in this case." Appellant's Brief at 19. He contends that the procedure used by the trial court was fundamentally unfair and an abuse of discretion, that the MCPD's involvement in the decision on his request is troubling because the agency was, at least nominally, his lawyer, that the MCPD took an adversarial position against him, that a public defender is fundamentally an advocate not the court's investigator or advisor, and that the procedure which pitted him against the MCPD was fundamentally unfair.

The State maintains that the court did not abuse its discretion and argues that Sistrunk misunderstands a number of the factors in Scott "by conflating all of them into a hypothetical discussion of the significance of an issue to a defendant's case." Appellee's Brief at 10-11. The State argues that an application for an expert identification witness raises particular concerns under Scott's criteria regarding "whether the requested expert services could nonetheless be performed by counsel" through cross-examination. Id. at 11-12 (citation omitted). The State further argues that, when records such as photographs or video recordings "are present, the utility of opinion testimony regarding other eyewitness identification is greatly lessened, or even eliminated." Id. at 13. The State additionally contends that Sistrunk's proposed expert did not appear to be qualified to

14

testify to the matters identified by his motion, that the proposed expert's résumé "contains virtually no indication that he was qualified to offer expert evidence on the issue of eyewitness identification," and that the résumé did not identify any scholarly work or publications in the areas of identification, memory processes, or stress or adrenalin reactions. Id. at 17. The State argues that it did not rely on an expert and this fact does not favor Sistrunk's request. The State further contends that Sistrunk argues only that no one claimed the proposed expert's fee was excessive, but that his burden was to affirmatively show the fee was reasonable and that he did not do so by comparing the fee to the costs of incarceration. The State notes that defense counsel cross-examined Busch as to aspects of the robbery which could be used to impeach her identification of him and that the record does not support his assertion that an expert witness would have made an error in Busch's identification more or less likely. The State also argues that Sistrunk's claims regarding the practice of involving the public defender in the appointment of experts for indigent defendants are waived because Sistrunk and his private counsel never objected or presented arguments against the procedure to the trial court and that, even if not waived, there is no basis for Sistrunk's claim that the MCPD did not review his request for an expert witness under the relevant standard.

Indiana Evidence Rule 702 permits expert witness testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The appointment of experts for indigent defendants is left to the trial court's sound discretion. McConniel v. State, 974 N.E.2d 543, 558 (Ind. Ct. App. 2012) (citing Beauchamp v. State, 788 N.E.2d 881, 888 (Ind. Ct.

15

App. 2003) (citing Jones v. State, 524 N.E.2d 1284, 1286 (Ind. 1988))), trans. denied. It is within the trial court's discretion to determine whether the requested service would be needless, wasteful or extravagant. Id. The trial court is not required to appoint at public expense any expert that the defendant might find helpful. Id. The defendant requesting the appointment of an expert bears the burden of demonstrating the need for the appointment. Id.

The central inquiries in deciding this issue are whether the services are necessary to assure an adequate defense and whether the defendant specifies precisely how he would benefit from the requested expert services. Id. (citing Scott v. State, 593 N.E.2d 198, 200 (Ind. 1992)). A defendant cannot simply make a blanket statement that he needs an expert absent some specific showing of the benefits that the expert would provide. Id. "The trial court may consider whether the proposed expert's services would bear on an issue for which expert opinion would be necessary or the request for an expert appears to be exploratory only, whether the expert services will go toward answering a substantial question or simply an ancillary one, the severity of the possible penalty the defendant faces, the cost of the expert services, and the complexity of the case." Id. at 557-558 (citing Scott, 593 N.E.2d at 200-202). The circumstances under which expert testimony regarding eyewitness identification is permitted are fact sensitive and must be assessed on a case-by-case basis. Cook v. State, 734 N.E.2d 563, 570 (Ind. 2000), reh'g denied.

In Reed v. State, the defendant wished to present expert testimony on the subject of the reliability of eyewitness identification, and the trial court refused. 687 N.E.2d 209,

211 (Ind. Ct. App. 1997), reh'g denied. On appeal, the court noted that the defendant was

convicted solely upon the testimony of one witness. Id. at 212. The court then stated:

> In Hopkins[ v. State, 582 N.E.2d 345, 353 (Ind. 1991)], the Indiana
> Supreme Court recognized the trend of cases recognizing the "built-in
> potential for error in eyewitness cases." [] The court also noted that the
> admissibility of such expert testimony is favored by the weight of authority.
> Judge Posner, in Krist v. Eli Lilly & Co. (1990) 7th Cir., 897 F.2d 293
> pointed out some problems inherent in witness testimony. "An important
> body of psychological research undermines the lay intuition that confident
> memories of salient experiences . . . are accurate and do not fade with time
> unless a person's memory has some pathological impairment." Id. at 296.
>
> Although not taking issue with the contention that eyewitness
> accounts are less reliable than once thought, the Seventh Circuit, perhaps
> too sweepingly, noted in United States v. Larkin (1992) 7th Cir., 978 F.2d
> 964, 971, cert. denied (1993) 507 U.S. 935, 113 S.Ct. 1323, 122 L.Ed.2d
> 709:
>
> > "[E]xpert testimony regarding the potential hazards of
> > eyewitness identification-regardless of its reliability-'will not
> > aid the jury because it addresses an issue of which the jury
> > already generally is aware, and it will not contribute to their
> > understanding' of the particular factual issues posed.
> > (citations omitted). These hazards are well within the ken of
> > most lay jurors, and [defendant's] counsel was granted ample
> > opportunity to discuss those hazards and cast doubt upon the
> > witnesses' eyewitness identification of his client."
>
> The holding indicates the view that "experts" do nothing more than
> highlight the fact that witnesses often misidentify individuals, a concept
> well within the realm of understanding of the average juror.

Id. at 212-213. After reviewing several opinions in other states, the court held that "we

suggest that trial courts might be well advised to permit such expert testimony in order to

assist the jury in its evaluation of the evidence," that "[n]evertheless we are reminded

that, at least with regard to experts paid from public funds, [the] defendant has the burden

of demonstrating that 'the services [requested] are *necessary* to assure an adequate

defense,'" that "[w]hile expert testimony is surely helpful in many cases, it will be truly necessary in far fewer instances," and that "[t]he concept that eyewitness identification is flawed or subject to serious question in a particular instance may be placed within the jury's realm of understanding by careful cross-examination and by counsel's argument to the jury." Id. at 213-214 (quoting Scott, 593 N.E.2d at 200).

In Cook, the defendant wished to present the testimony of Dr. Terry as an expert on the subject of the reliability of eyewitness identification, and the trial court did not permit Dr. Terry to testify before the jury. 734 N.E.2d at 569. The Court noted that none of the witnesses who identified the defendant was equivocal in his or her testimony and held that the trial court did not abuse its discretion in refusing to allow the expert testimony. Id. at 571.

In Farris v. State, the defendant sought to present the testimony of Dr. Terry as an expert on the subject of the reliability of eyewitness identification, and the trial court refused. 818 N.E.2d 63, 67 (Ind. Ct. App. 2004), trans. denied. The Court initially noted that Indiana Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning . . . whether a witness has testified truthfully . . . ." Id. The Court then held that the trial court had found that, based on the evidence presented and Farris's cross-examination of the witnesses, Dr. Terry's testimony was not necessary to place the concept of eyewitness misidentification within the jury's realm of understanding and that "[t]his was a valid ground for excluding Dr. Terry from testifying." Id. at 68. The Court found that there were two eyewitnesses and that "[t]heir accounts of the robbery were

18

consistent and supported by the gas station's surveillance video" and held the trial court did not abuse its discretion by excluding Dr. Terry from testifying. Id.

In this case, as noted by Sistrunk, Busch was the sole eyewitness to the armed robbery. However, the record reveals that Sistrunk's counsel was able to thoroughly cross-examine Busch regarding her memory of the robbery and her identification of Sistrunk as the robber. Specifically, Sistrunk's counsel questioned her regarding her vision, the fact that she felt scared and was worried she would be shot at the time of the robbery, the trauma of experiencing the robbery and the fact that she quit her job a few days afterwards, the jacket and hat worn by the person who robbed her, the eyebrows of the person, the reason she picked the photograph of Sistrunk from the array, the fact that she looked at the photographs closely, that at that time she was seventy or eighty percent sure that Sistrunk was the person who robbed her, that after she signed the array and the detective had stated she picked the right guy she became one hundred percent sure, and that Sistrunk had a scar above his right eyebrow and Busch did not remember seeing the scar at the time of the robbery. Busch also indicated that she was in shock when the robbery happened, and when asked if "[i]t's hard to remember exactly what you saw during the robbery," she replied "[i]t's hard, it is, yes." Transcript at 47. In addition, the State admitted two versions of a video recording taken from a camera at the gas station showing the robbery, which at a minimum favors a finding that the trial court did not abuse its discretion in determining that Dr. Terry's testimony was not necessary under the circumstances. See Farris, 818 N.E.2d at 68 (noting that the eyewitness accounts of the robbery were supported by the gas station's surveillance video). In closing arguments,

19

Sistrunk's defense counsel argued that the video recording did not show Sistrunk's mark above the eyebrow or the tattoo on his hand and that, although the video does not exclude Sistrunk as a possible suspect, it is not enough to make an identification of him. Defense counsel also argued that Busch was in shock, did not have a good look at the person who robbed her, picked the person in the photo array because he had the darkest skin, and she was seventy to eighty percent sure that she had picked the right person. We also note that the State did not rely upon an expert and the relative cost of the proposed expert testimony at trial.

We also note that this case was tried to the court as the trier of fact, that judges are presumed to know the law, that the concept that eyewitness identifications may be mistaken or questionable in certain circumstances is within the realm of understanding of the court, and that additional testimony related to that concept in certain circumstances, such as here where the court was able to assess Busch's testimony and the video recording, may be of limited utility.

Based upon the record, Sistrunk failed to meet his burden of demonstrating that the testimony of his proposed expert was necessary to assure an adequate defense, and we cannot say the trial court abused its discretion in denying his request for public funds to pay for the fees of the proposed expert. See Reed, 687 N.E.2d at 211-214 (noting the defendant was convicted solely upon the testimony of one witness and holding that the defendant did not meet his burden of demonstrating that the expert testimony regarding the subject of the reliability of eyewitness identification was necessary to assure an adequate defense and that the concept that eyewitness identification is flawed or subject

to serious question in a particular instance may be placed within the jury's realm of understanding by careful cross-examination and by counsel's argument to the jury).

To the extent that Sistrunk asserts the court erred in involving the MCPD or Hill in the process of determining whether to grant his request for funds for an expert, Sistrunk, who was represented by private counsel, did not raise the issue before the trial court and thus waived the issue. See In re Larry L. Thompson Revocable Trust, 954 N.E.2d 1056, 1061 (Ind. Ct. App. 2011) ("A party must show that it gave the trial court a *bona fide* opportunity to pass upon the merits of a claim before seeking an opinion on appeal."). Waiver notwithstanding, Sistrunk does not demonstrate that the recommendation of the MCPD was based solely on budgetary grounds, that the trial court relied exclusively on the MCPD's statement and failed to evaluate the necessity of the requested expert, or that he was prejudiced by the court taking into consideration the statements made by Hill. Sistrunk is not entitled to reversal of his convictions on this basis.

CONCLUSION

For the foregoing reasons, we remand with instructions to enter Sistrunk's conviction for criminal confinement as a class D felony and to impose a sentence consistent therewith to be served concurrent with his sentence for robbery, and in all other respects we affirm.

Affirmed in part, reversed in part, and remanded.

ROBB, J., concurs.

BARNES, J., concurs in part and dissents in part with separate opinion.

21

# IN THE
# COURT OF APPEALS OF INDIANA

GARY SISTRUNK,                          )
                                        )
    Appellant-Defendant,             )
                                        )
        vs.                       )     No. 49A05-1211-CR-567
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.              )

**BARNES, Judge, concurring in part and dissenting in part with separate opinion**

Although I agree with the majority's conclusion that the trial court did not abuse its discretion in denying Sistrunk's request for expert witness funds, I respectfully dissent from its conclusion that the robbery and confinement were separate criminal transgressions. Ordering Busch to sit on the floor after Sistrunk took the money was inherently part of the robbery because it effectuated his getaway. This is not to say I view all actions that effectuate a getaway as inherently part of a robbery. But here, where Sistrunk did not order Busch to another location or otherwise restrain her and only ordered her to sit behind the counter while he left the store, does not, in my view, rise to the level of a separate crime. This was something that simply was needed to carry out the original robbery. Sistrunk has demonstrated that the confinement was not greater than

what was needed to carry out the robbery.  Accordingly, I would vacate the confinement conviction entirely.